## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| **JARED HENDRIX; RETIRE CONGRESS NORTH DAKOTA; LIBERTY INITIATIVE FUND; TRENTON POOL; and, ACCELEVATE 2020, LLC.,** | : : : : | **CIVIL ACTION #_____** |
| | : | **COMPLAINT** |
| **Plaintiffs,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **MICHAEL HOWE, in his official capacity as the Secretary of State of North Dakota; and DREW WRIGLEY, in his official capacity as The Attorney General of the state of North Dakota,** | : : : : : | |
| | : | *Filed Electronically* |
| **Defendants.** | : | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.     Plaintiffs, JARED HENDRIX, RETIRE CONGRESS NORTH

DAKOTA, LIBERTY INITIATIVE FUND, TRENTON POOL AND

ACCELEVATE 2020, LLC (hereinafter, collectively, "Plaintiffs"), by and through

their undersigned legal counsel, file this civil action under 42 U.S.C. §§1983 and

1988, for prospective equitable relief against Defendants, MICHAEL HOWE, in

his official capacity as the Secretary of State of North Dakota and DREW

WRIGLEY, in his official capacity as the Attorney General of North Dakota

(hereinafter, collectively, "Defendants"), requesting emergency temporary,

preliminary and permanent declaratory and injunctive relief prohibiting Defendants

from enforcing: (1) Article III, Sections 3 and 9 of the North Dakota state constitution to the extent it requires that initiative petitions may only be circulated by a North Dakota elector (attached hereto as "Exhibit A"); (2) N.D. CENT. CODE Chapter 16.1-01-09(3) to the extent it requires circulators of initiative petitions to execute a sworn, notarized affidavit, subject to criminal penalty, that the circulator of the initiative petition is a "qualified elector" of North Dakota (attached hereto as "Exhibit B"); and (3) N.D. CENT. CODE Chapter 16.1-01-12(1)(i) and (2)(a), imposing Class A misdemeanor criminal liability on out-of-state circulators of initiative petitions in North Dakota (attached hereto as "Exhibit B") (hereinafter, collectively, the "Challenged Provisions").

2.      The Challenged Provisions severely impair clearly established rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

3.      The Challenged Provisions are not narrowly tailored to advance a compelling governmental interest.

4.      Furthermore, the Challenged Provisions fail the balancing test established by the United States Supreme Court in *Anderson v. Celebrezze*, for less than severe burdens impairing rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution, as the Challenged Provisions have failed to remedy perceived evil sought to be cured.

5.     Accordingly, the Challenged Provisions are unconstitutional and Plaintiffs are entitled to an immediate emergency temporary restraining order and, after a hearing, a preliminary injunction requested by Plaintiffs.

6.     The United States Supreme Court has established that the circulation of referendum petitions is "core political speech" afforded the highest protection under the First and Fourteenth Amendments to the United States Constitution.

7.     The Challenged Provisions severely impair rights guaranteed to Plaintiffs under the First Amendment and Fourteenth Amendment to the United States Constitution, because they (intentionally) limit the number of voices available to carry Plaintiffs' message to North Dakota residents as well as the right of North Dakota residents to receive political speech from Plaintiffs.

8.     Constitutional review of state statutes which impose severe restrictions on rights guaranteed under the First and Fourteenth Amendments are subject to strict scrutiny review and may only be upheld if they are narrowly tailored to advance a compelling governmental interest.

9.     Plaintiffs only seek to hire out-of-state petition circulators willing to submit to the jurisdiction of North Dakota for any post-petition filing investigation, service of process and/or prosecution.

10.     No federal court, including this court, has ever ruled a residency requirement for petition circulation to be narrowly tailored to advance a

compelling governmental interest where out-of-state petition circulators are willing to submit to the state's jurisdiction for any post-petition filing investigation, service of process and/or prosecution.

11.     North Dakota does not have the authority under the federal constitution to close off its borders to, or otherwise impair the ability of, citizens of other states who wish to submit to the jurisdiction of North Dakota in order to participate in political speech and to join with North Dakota residents to advance common political goals within North Dakota.

## JURISDICTION

12.     Jurisdiction lies in this Court under 28 U.S.C. §1331, providing that district courts shall have original jurisdiction over all civil actions arising under the Constitution of the United States.  Moreover, jurisdiction lies under 42 U.S.C. §1983 and 28 U.S.C. §1343(a), the jurisdictional counterpart of 42 U.S.C. §1983, as Plaintiffs allege violation of rights guaranteed to them under the First and Fourteenth Amendments to the United States Constitution.

## VENUE

13.     Venue is proper in the United States District Court for the District of North Dakota under 28 U.S.C. §1391 as Defendants exercise their authority exclusively within this district and maintain their offices within this district and all of the operative acts and/or omissions have or will occur within this district.

## PARTIES

14.     Plaintiff RETIRE CONGRESS NORTH DAKOTA is an Initiated Petition Sponsoring Committee registered under the laws of North Dakota and is currently lawfully circulating a petition for an initiative to amend the North Dakota state constitution to provide that no person may be elected or appointed to serve a term, or portion of a term, in the United States Senate or the United States House of Representatives if that person could attain 81 years of age by December 31st of the year immediately preceding the end of the term (the "Initiative").  Plaintiff RETIRE CONGRESS NORTH DAKOTA is prohibited by the Challenged Statutes from employing out-of-state professional and/or volunteer circulators to expand the number of like-minded citizens available to circulate Plaintiff's Initiative petition. Plaintiff RETIRE CONGRESS NORTH DAKOTA would like to hire Plaintiff TRENTON POOL who is a professional petition circulator and owner of Plaintiff ACCELEVATE 2020, LLC, a petition management firm able to deploy petition circulators who reside outside of North Dakota.  Plaintiff RETIRE CONGRESS NORTH DAKOTA wishes to hire Plaintiffs TRENTON POOL and ACCELEVATE 2020, LLC because they have, in past ballot access petition drives, proven their ability to collect large numbers of valid petition signatures in short periods of time and whose services are required in order to collect the signatures necessary to qualify the Initiative for the North Dakota ballot. Plaintiff

RETIRE CONGRESS NORTH DAKOTA also would like to employ the services of the out-of-state professional petition circulators currently working for Plaintiff RETIRE CONGRESS NORTH DAKOTA as trainers for Plaintiffs' very few, and insufficient number of, North Dakota resident circulators, but who are forbidden from actually collecting signatures as a direct and proximate result of the Challenged Provisions.   Plaintiff RETIRE CONGRESS NORTH DAKOTA will only hire out-of-state petition circulators who are willing, as a condition precedent to lawfully being permitted to circulate Plaintiff's Initiative petition in North Dakota, to submit to the jurisdiction of North Dakota with respect to any post-petition filing investigation, service of process and/or prosecution of any issue related to petitions circulated by them in North Dakota.  Plaintiff RETIRE CONGRESS NORTH DAKOTA's address is 5035 28th Avenue S #302, Fargo, North Dakota, 58104.

15.    Plaintiff JARED HENDRIX is a resident of North Dakota and is the chairperson of Plaintiff RETIRE CONGRESS NORTH DAKOTA and is a supporter of the Initiative petition sponsored by Plaintiff RETIRE CONGRESS NORTH DAKOTA to amend the North Dakota state constitution.  Plaintiff JARED HENDRIX's address is 5035 28th Avenue S #302, Fargo, North Dakota, 58104.

16.    Plaintiff LIBERTY INITIATIVE FUND is a nonprofit 501(c)(4) organization actively engaged in supporting and assisting in the management of the Initiative to amend the North Dakota state constitution by Plaintiff RETIRE CONGRESS NORTH DAKOTA. Plaintiff LIBERTY INITIATIVE FUND is helping to fund the drive to collect the required number of valid signatures to qualify the proposed amendment to the North Dakota state constitution and assisting Plaintiff RETIRE CONGRESS NORTH DAKOTA in identifying and recruiting a team of professional petition circulators, most of whom are residents outside of North Dakota, to assist in the collection of signatures before the looming winter weather in North Dakota becomes a prohibitive factor in the ability to collect signatures for ballot access.  Plaintiff LIBERTY INITIATIVE FUND is one of the original national proponents of the effort to limit the age of Member of Congress in order to remedy the recent parade of infirmed lawmakers unwilling to retire from public office before their mental faculties degrade their ability to exercise the responsibility of holding high public office.  Plaintiff LIBERTY INITIATIVE FUND's mission is to promote and support the empowerment of citizens through the use of the initiative and referendum process and intends to remain active in North Dakota indefinitely.  Plaintiff LIBERTY INITIATIVE FUND is headquartered at 4491 Cheshire Station Plaza, Suite 176, Woodbridge, Virginia, 22192.

17.    Plaintiff TRENTON POOL is an experienced professional petition circulator who is a resident of Texas.  Plaintiff TRENTON POOL would like to help circulate the Initiative petition sponsored by Plaintiff RETIRE CONGRESS NORTH DAKOTA but is prohibited from freely doing so as a direct result of Challenged Provisions.  Plaintiff TRENTON POOL is willing, as a condition precedent to being able to freely circulate Plaintiff RETIRE CONGRESS NORTH DAKOTA's Initiative petitions in North Dakota, to submit to the jurisdiction of North Dakota with respect to any investigation, service of process and/or prosecution of any issue related to petitions circulated by him in North Dakota. Plaintiff TRENTON POOL has circulated ballot access petitions in Pennsylvania, New Jersey, Texas, Indiana, Ohio, Illinois, California, Florida, Maine, Washington, Oregon, New York, Michigan, Arkansas, Arizona, Montana, Alaska and Alabama.  Plaintiff TRENTON POOL, through his petition circulation firms, has proven the ability to collect large numbers of valid signatures in short periods of time for his clients.  For instance, Plaintiff TRENTON POOL, through his petition circulation firm, collected over 13,000 valid signatures for an initiative petition to amend the Pittsburgh Home Rule Charter in Pennsylvania in 2016 in less than 3 weeks after Judge Hornak of the United States District Court for the Western District of Pennsylvania preliminarily enjoined Pennsylvania's residency requirement for petition circulators for home rule charter petitions.  Further,

Plaintiff TRENTON POOL has never been accused of petition fraud by any private petition challenger or by any governmental entity.  Plaintiff TRENTON POOL resides at 3800 Creek Road, Dripping Springs, Texas.

18.     Plaintiff ACCELEVATE 2020, LLC, is a professional petition circulating firm formed under the laws of Texas that contracts with professional petition circulators to bid on contracts to collect signatures on ballot access petitions in order to secure ballot access for candidates, initiatives and referendums in jurisdictions across the United States.  Plaintiff TRENTON POOL is the sole member and president of Plaintiff ACCELEVATE 2020, LLC.  ACCELEVATE 2020, LLC, has been asked to submit a bid to circulate initiative petitions sponsored by Plaintiff RETIRE CONGRESS NORTH DAKOTA but can only do so if the residency requirement is either repealed or enjoined.  Plaintiff ACCELEVATE 2020, LLC's address is 3800 Creek Road, Dripping Springs, Texas.

19.     Defendant MICHAEL HOWE is the current Secretary of State North Dakota and is made a Defendant solely in his official capacity.  Defendant MICHAEL HOWE is vested with authority to enforce the Challenged Provisions. Defendant MICHAEL HOWE is a state actor within the meaning of 42 U.S.C. §1983.  Defendant MICHAEL HOWE's office is located at 600 East Boulevard Avenue, Department 108, Bismark, North Dakota, 58505.

20.     Defendant DREW WRIGLEY is the Attorney General of North

Dakota and is made a Defendant solely in his official capacity.  Defendant DREW

WRIGLEY is charged with the criminal enforcement of the Challenged Provisions.

Defendant DREW WRIGLEY is a state actor within the meaning of 42 U.S.C.

§1983.  Defendant DREW WRIGLEY's office is located at 600 East Boulevard

Avenue, Department 125, Bismark, North Dakota, 58505.

## RELEVANT FACTUAL ALLEGATIONS

21.     Plaintiffs reassert and allege all factual statements and allegations

from each preceding paragraph as if set forth fully herein.

22.     Article III of the North Dakota state constitution provides that the

people of North Dakota may propose and enact amendments to the state

constitution through an initiative process whereby a petition may be circulated to

collect a certain number of valid signatures from electors to place the proposed

constitutional amendment on the state ballot for the people to either adopt or reject

at a statewide election.  *See*, Exhibit A, attached hereto.

23.     Article III, Section 9 of the North Dakota state constitution provides,

in relevant part, that: "A constitutional amendment may be proposed by initiative

petition.  If signed by electors equal in number to four percent of the resident

population of the state at the last federal decennial census, the petition may be

submitted to the secretary of state.  All other provisions relating to initiative

measures apply hereto." *See*, Exhibit A, attached hereto.

24.     Article III, Section 3 of the North Dakota state constitution provides,

in relevant part, that: "The petition shall be circulated only by electors." *See*,

Exhibit A, attached hereto.

25.     N.D. CENT. CODE Chapter 16.1-09(3) requires circulators of initiative

petitions to execute a sworn affidavit that the circulator is a qualified elector and

required to provide their residential address.  *See*, Exhibit B, attached hereto.

26.     N.D. CENT. CODE Chapter 16.1-01-12(1)(i) provides, in relevant part,

that it is "unlawful for an individual, measure committee…, or other organization

to [c]irculate an initiative, referendum, recall, or any other election petition…when

not qualified to do so." *See*, Exhibit B, attached hereto.

27.     N.D. CENT. CODE Chapter 16.1-01-12(2)(a) provides that a violation

of subsection (1)(i) is a "class A misdemeanor." *See*, Exhibit B, attached hereto.

28.     Defendants continue to enforce the Challenged Provisions.

29.     Plaintiffs RETIRE CONGRESS NORTH DAKOTA and JARED

HENDRIX are currently lawfully sponsoring and circulating their Initiative

petition to amend the North Dakota state constitution to provide that no person

may be elected or appointed to serve a term or portion of a term in the United

States Senate or the United States House of Representatives if that person could

attain 81 years of age by December 31st of the year immediately preceding the end of the term.

30.     Plaintiffs must collect and file with Defendant MICHAEL HOWE 31,164 valid signatures no later than midnight on February 12, 2024, to secure ballot access for their Initiative.

31.     In addition to the required 31,164 valid petition signatures necessary to place Plaintiffs' proposed Initiative on the statewide ballot, Defendants recommend all sponsors of initiative petitions to collect and file several thousand additional signatures to protect against the inevitable number of signatures deemed invalid through Defendants' validation process.  A recommendation which is a best practice adopted by all professional petition firms.

32.     Plaintiffs RETIRE CONGRESS NORTH DAKOTA and JARED HENDRIX have recruited, trained and fielded 55 petition circulators who have been working to collect signatures since July 21, 2023, the date Defendant MICHAEL HOWE approved the Initiative petition for circulation.

33.     As part of the training and supervisory arm of Plaintiffs' petition drive, Plaintiffs are also paying, on an hourly basis, 10 out-of-state professional petition circulators who are not able to collect signatures, but who are relegated to the mere role of observing Plaintiffs' petition drive as a direct and proximate result of the Challenged Statutes.

34.    As of the last end-of-month review of Plaintiffs' petition drive (August 30, 2023), the petition circulators recruited by Plaintiffs RETIRE CONGRESS NORTH DAKOTA and JARED HENDRIX have collected 8,279 petition signatures.

35.    Plaintiffs RETIRE CONGRESS NORTH DAKOTA, JARED HENDRIX and LIBERTY INITIATIVE FUND have determined, based on their considered experience, that they require the services of professional petition circulators who reside outside of North Dakota in order to expand both the geographic reach of their petition drive and the total number of North Dakota residents they can engage in political speech in order to collect the required number of petition signatures necessary to secure ballot access before the onset of North Dakota's severe winter weather.

36.    Specifically, Plaintiffs intend to contract for the services of Plaintiffs TRENTON POOL and his petition circulation firm ACCELEVATE 2020, LLC, with whom Plaintiff LIBERTY INITIATIVE FUND, LLC has successfully worked with on petition drives in other states, most recently in the Michigan

37.    Professional petition circulators, such as those contracted with by Plaintiffs TRENTON POOL and ACCELEVATE 2020, LLC, make their living by traveling from state to state collecting large numbers of valid petition signatures for causes in which they believe and in support of ballot access to permit voters to

decide the important issues confronting voters in those states that have established the initiative and referendum process.

38.    Many (if not most) of the professional petition circulators who contract to work with Plaintiffs TRENTON POOL and ACCELEVATE 2020 LLC, are able to collect several hundred valid petition signatures for each day they work in good weather and working conditions.

39.    Each of the professional petition circulators that Plaintiffs TRENTON POOL and ACCELEVATE 2020, LLC intend to deploy into North Dakota collect, on average, over 20 valid petition signatures per hour, under normal weather and working conditions with an average per-signature cost of approximately just $7.00.

40.    To date, the in-state petition circulators currently working for Plaintiff RETIRE CONGRESS NORTH DAKOTA have collected an average of just 6.4 signatures per compensated hour of work.

41.    To date, only 1 in-state petition circulator currently working for Plaintiff RETIRE CONGRESS NORTH DAKOTA have averaged more than 16 signatures per hour of compensated work.

42.    Specifically, the 55 in-state petition circulators currently working for Plaintiff RETIRE CONGRESS NORTH DAKOTA, have individually collected the following number of signatures (along with their corresponding number of compensated hours worked and the resulting average number of signatures

collected per hour of compensated work): 849 (67.37 hours/12.6 average); 700 (44.95 hours/15.6 average); 658 (79.48 hours/8.3 average); 413 (52.32 hours/7.9 average); 397 (54.72 hours/7.3 average); 372 (30.3 hours/12.3 average); 371 (60.59 hours/6.1 average); 331 (25.23 hours/13.1 average); 288 (46.47 hours/6.2 average); 241 (59.05 hours/4.1 average); 240 (23.28 hours/10.3 average); 219 (17 hours/12.9 average); 218 (16 hours/13.6 average); 199 (23.5 hours/8.5 average); 196 (14 hours/14 average); 182 (10.18 hours/17.9 average); 168 (5.55 hours/30.3 average); 162 (11.82 hours/13.7 average); 158 (29.41 hours/5.4 average); 116 (28.3 hours/4.1 average); 109 (8.5 hours/12.8 average); 101 (32.56 hours/3.1 average); 99 (6.36 hours/15.6 average); 98 (22.34 hours/4.4 average); 96 (40 hours/2.4 average); 92 (8 hours/11.5 average); 90 (8.5 hours/10.6 average); 85 (14.18 hours/6 average); 71 (6.5 hours/10.9 average); 71 (9.13 hours/7.8 average); 70 (4.63 hours/15.1 average); 67 (5.77 hours/11.6 average); 61 (17.78 hours/3.4 average); 58 (8 hours/7.3 average); 57 (6.73 hours/8.5 average); 56 (14 hours/4 average); 55 (7.82 hours/7 average); 54 (7 hours/7.7 average); 53 (7.4 hours/7.2 average); 49 (9.44 hours/5.2 average); 48 (8 hours/6 average); 48 (11.42 hours/4.2 average); 38 (13.57/2.8 average); 34 (8 hours/4.3 average); 31 (10.05 hours/3.1 average); 25 (5.82 hours/4.3 average); 17 (3.45 hours/4.9 average); 15 (3.57 hours/4.2 average); 13 (2.55 hours/5.1 average); 12 (4.22 hours/2.8 average); 11 (4.48 hours/2.5 average); 7 (1.18 hours/5.9 average); 6 (1.36 hours/4.4 average); 4 (2.03 hours/2

average); and 1 in-state circulator collected 0 signatures after have billed Plaintiffs for 2.42 hours of work for a grand total average hourly production of 0 signatures per hour.

43.     As of the end of last month, the average total cost to collect each signature has been an astronomical $13.25 per signature.

44.     Because the professional out-of-state petition circulators that Plaintiff RETIRE CONGRESS NORTH DAKOTA wish to hire can each collect, on average, over 20 signatures per hour, the total cost of Plaintiffs' petition drive will decrease exponentially if the Challenged Provisions are enjoined (an estimated savings of approximately $208,000).

45.     Because professional petition circulators make their living collecting petition signatures, they have the highest incentive to protect their own reputation for honestly, integrity and reliability in the collection of petition signatures.  As a result, the overwhelming majority of professional petition circulators have never engaged in any form of petition fraud.

46.     None of the petition circulators contracted by Plaintiffs TRENTON POOL and ACCELEVATE 2020, LLC, have ever been accused or convicted of petition fraud.

47.     Prior to filing any petition, Plaintiffs TRENTON POOL and
ACCELEVATE 2020, LLC review each petition signature for facial validity and
refuse to submit any petition signature they do not believe is valid.

48.     Furthermore, Plaintiffs TRENTON POOL and ACCELEVATE 2020,
LLC, have made it clear that any petition circulator who returns a fraudulent
signature will be immediately terminated and placed one or more of the petition
industry's various "do not hire" black lists preventing that circulator from working
with any major petition firm in the future.  One strike and you are out.

49.     In Pennsylvania, TRENTON POOL and his petition circulation firm
was able to collect over 13,000 valid petition signatures in less than 3 weeks after
Judge Hornak preliminarily enjoined the ban on out-of-state petition circulators for
Pennsylvania home rule petitions in 2016.

50.     In addition to Plaintiffs TRENTON POOL and ACCELEVATE 2020,
LLC, Plaintiffs RETIRE CONGRESS NORTH DAKOTA and JARED HENDRIX
intend to immediately deploy the 10 out-of-state petition circulators currently
working for them in North Dakota as mere trainers and supervisors and send them
out to collect actual petition signatures.

51.     The ability to contract and deploy seasoned and trained out-of-state
petition circulators will permit Plaintiffs RETIRE CONGRESS 2020, LLC and
JARED HENDRIX to immediately expand the total quantum of political speech

they are able to muster in North Dakota and expand their ability to communicate with the voters of North Dakota.

52.     Petition circulators, in addition to the mechanical process of collecting valid petition signatures, of necessity, must communicate enough substantive political speech to a potential signer in order to convince that potential signer to sign Plaintiffs' Initiative petition form.

53.     As a result of the foregoing, the process of collecting petition signatures to secure ballot access also acts as a dual process of informing the North Dakota electorate of the issue Plaintiffs wish them to adopt at a statewide election.

54.     Accordingly, the process of petition circulation is grass-roots political speech which is afforded the highest level of protection by the United States Supreme Court under the First and Fourteenth Amendments to the United States Constitution.

55.     The Challenged Provisions reduce the total number of voices available to Plaintiffs to carry and communicate their message for political change to the voters of North Dakota.

56.     The Challenged Provisions expressly exclude over 259 million citizens of the United States who are both over the age of 18 and reside outside of North Dakota from lawfully associating with Plaintiffs RETIRE CONGRESS NORTH DAKOTA and JARED HENDRIX in the circulation of Plaintiffs'

Initiative petition and the collection of signatures necessary to secure ballot access for the political change in North Dakota advocated by Plaintiffs.

57.    The vast majority of skilled professional petition circulators reside outside the state of North Dakota, thereby depriving Plaintiffs RETIRE CONGRESS NORTH DAKOTA and JARED HENDRIX of the best and most efficient professional petition circulators in the nation.

58.    The United States Supreme Court and virtually every federal district and circuit court has ruled that the reduction of the pool of available petition circulators imposes a severe burden on rights guaranteed under the First and Fourteenth Amendment to the United States Constitution.

59.    The Challenged Provisions have failed to police petition fraud in the state of North Dakota.

60.    Whereas the out-of-state petition circulators with whom Plaintiffs RETIRE CONGRESS NORTH DAKOTA and JARED HENDRIX wish to contract with to circulate their petitions in North Dakota have no history of petition fraud, conversely, the Challenged Provisions have utterly failed to prevent petition fraud by in-state petition circulators.

61.    Since the enactment of the Challenged Provisions, in-state petition circulators have been charged and convicted of petition fraud in North Dakota.

62.    Plaintiffs RETIRE CONGRESS NORTH DAKOTA and JARED HENDRIX will only contract with out-of-state petition circulators willing to submit to the jurisdiction of North Dakota for any post-petition filing investigation, service of process, and prosecution related to any petition circulated by them in North Dakota.

63.    Plaintiffs RETIRE CONGRESS NORTH DAKOTA and JARED HENDRIX will only hire out-of-state petition circulators willing to produce a valid photo identification to establish his/her address at the time the required petition affidavit is executed for the purpose of any service of process as part of any post-filing investigation and/or prosecution.

64.    Plaintiffs TRENTON POOL and ACCELVATE 2020, LLC's petition circulators have routinely submitted to the jurisdiction of the many states in which they have circulated ballot access petitions in the past – all without incident.

65.    Federal courts, including federal district courts in this federal circuit, have struck down less stringent bans on out-of-state petition circulators willing to submit to the jurisdiction of the state, because requiring out-of-state petition circulators to submit to the jurisdiction of the state has been universally adopted as the consensus means to more narrowly protect the state's legitimate interest in policing petition fraud than blanket bans on out-of-state petition circulators.

66.    To date, in the many states who now require out-of-state petition circulators to submit to their jurisdiction as a condition precedent to circulate ballot access petition in their state, there is not a single recorded incident of an out-of-state petition circulator having failed to comply with their post-petition filing obligations.

67.    The Challenged Provisions make it less likely that Plaintiffs will be able to collect the required number of signatures to secure ballot access because the nearing onset of North Dakota winter will prevent Plaintiffs from collecting meaningful numbers of petition signatures past November of this year.

68.    The Challenged Provisions make it less likely that Plaintiffs can collect the required number of signatures before the February 12, 2024, deadline because they limit the number of professional petitions circulators available to be hired by Plaintiffs thereby forcing Plaintiffs to rely on less reliable, less skilled in-state petition circulators to collect the required number of petition signatures on their Initiative petitions.

69.    The Challenged Provisions are not narrowly tailored to advance a compelling governmental interest and cannot survive strict scrutiny analysis.

70.    The Challenged Provisions fail to advance any legitimate regulatory interest when out-of-state petition circulators are willing to submit to the state's

jurisdiction and provide their current residential address as a condition precedent to being able to lawfully circulate Plaintiffs' Initiative.

71.     The Challenged Provisions are not imposed on the circulation of candidate petitions in North Dakota.

72.     Defendants' enforcement and threatened enforcement of the Challenged Provisions is the direct and proximate cause of the impairment of Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution.

73.     Plaintiffs have no other adequate remedy at law.

### COUNT I
(Facial Challenge Under the First and Fourteenth Amendments to the United States Constitution)

74.     Plaintiffs reassert and allege each preceding paragraph as if set forth fully herein.

75.     The circulation of initiative and referendum petition in North Dakota is "core political speech" protected under the First and Fourteenth Amendments to the United States Constitution.

76.     The First and Fourteenth Amendments to the United States Constitution equally protect the rights of free speech afforded to both residents and non-residents of North Dakota.

77.     The Challenged Provisions facially impair rights guaranteed under the First and Fourteenth Amendments to the United States Constitution for all non-North Dakota citizens willing to submit to the jurisdiction of North Dakota as a condition precedent to being able to lawfully circulate initiative and referendum petitions in North Dakota

78.     The Challenged Provisions facially impair rights guaranteed to all Plaintiffs under the First and Fourteenth Amendments to the United States Constitution to associate with citizens who do not reside in North Dakota for the purpose of engaging in speech to effect meaningful political change in North Dakota.

79.     The Challenged Provisions impose a severe burden on rights guaranteed to all Plaintiffs under the First and Fourteenth Amendments to the United States Constitution because they limit the pool of available petition circulators able collect initiative and referendum petition signatures in North Dakota.

80.     The Challenged Provisions are not narrowly tailored to advance a legitimate compelling governmental interest.

81.     Accordingly, Defendants' enforcement of the Challenged Provisions is the direct and proximate cause of the impairment of rights guaranteed to

Plaintiffs under the First and Fourteenth Amendments to the United States

Constitution for which all Plaintiffs request relief.

## COUNT II
(As Applied Challenge Under the First and Fourteenth Amendments to the United
States Constitution)

82.     Plaintiffs reassert and allege each preceding paragraph as if set forth

fully herein.

83.     The circulation of initiative and referendum petition in North Dakota

is "core political speech" protected under the First and Fourteenth Amendments to

the United States Constitution.

84.     The First and Fourteenth Amendments to the United States

Constitution equally protect the rights of free speech afforded to both residents and

non-residents of North Dakota.

85.     The Challenged Provisions, as applied to all Plaintiffs, severely impair

rights guaranteed under the First and Fourteenth Amendments to the United States

Constitution for all non-North Dakota citizens willing to submit to the jurisdiction

of North Dakota as a condition precedent to being able to lawfully contract with,

and to circulate initiative and referendum petitions in the state of North Dakota.

86.     As applied to all Plaintiffs, the Challenged Provisions impair rights

guaranteed to all Plaintiffs under the First and Fourteenth Amendments to the

United States Constitution to associate with citizens who do not reside in North

Dakota for the purpose of engaging in speech to effect meaningful political change in North Dakota.

87.     The Challenged Provisions impose a severe burden on rights guaranteed to all Plaintiffs under the First and Fourteenth Amendments to the United States Constitution because they limit the pool of available petition circulators able collect initiative and referendum petition signatures in North Dakota.

88.     The Challenged Provisions are not narrowly tailored to advance a legitimate compelling governmental interest.

89.     Accordingly, Defendants' enforcement of the Challenged Provisions is the direct and proximate cause of the impairment of rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution for which all Plaintiffs request relief.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

a.     Enter an ORDER temporarily enjoining Defendants' enforcement of the Challenged Provisions against all Plaintiffs and any out-of-state petition circulator willing to submit to the jurisdiction of North Dakota for any post-petition filing investigation, service of process

and/or prosecution with respect to any petition circulated by an out-of-state petition circulator;

b.  After a hearing, enter an ORDER, preliminarily enjoining Defendants' enforcement of the Challenged Provisions against all Plaintiffs and any out-of-state petition circulator willing to submit to the jurisdiction of North Dakota for any post-petition filing investigation, service of process and/or prosecution with respect to any petition circulated by an out-of-state petition circulator for the duration of this action;

c.  Enter an ORDER, declaring the Challenged Provisions, as drafted, unconstitutional under the First and Fourteenth Amendments to the United States Constitution;

d.  Enter an ORDER, permanently enjoining Defendants' enforcement of the Challenged Provisions against any out-of-state petition circulator willing to submit to the jurisdiction of North Dakota for any post-petition filing investigation, service of process and/or prosecution with respect to any petition circulated by an out-of-state petition circulator;

e.  Award Plaintiffs the costs of this action together with their reasonable attorneys' fees and expenses pursuant to 42 U.S.C. §1988; and,

f.   Retain jurisdiction over this action and grant Plaintiffs any such other

relief which may, in the determination of this Honorable Court, be

necessary and proper.


Respectfully submitted,


Dated:  September 22, 2023          \_\_\_/s/ **Paul A. Rossi**_____
Paul A. Rossi, Esq.
*Counsel to Plaintiffs*
IMPG Advocates
316 Hill Street
Suite 1020
Mountville, PA  17554
717.961.8978
Paul-Rossi@comcast.net