**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| **JARED HENDRIX; RETIRE CONGRESS NORTH DAKOTA; LIBERTY INITIATIVE FUND; TRENTON POOL; and, ACCELEVATE 2020, LLC.,** | : : : : : | **CIVIL ACTION # 1:23-cv-00185-DLH-CRH** |
| **Plaintiffs,** | : : | **Judge Daniel L. Hovland** |
| **vs.** | : : : | **Brief In Support of Plaintiffs' Motion for Temporary Restraining** |
| **MICHAEL HOWE, in his official capacity as the Secretary of State of North Dakota; and DREW WRIGLEY, in his official capacity as The Attorney General of the state of North Dakota,** | : : : : : : | **Order & Preliminary Injunction** |
| | : : | *Filed Electronically* |
| **Defendants.** | : | |

<u>**PLAINTIFFS' BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION**</u>

## I.   <u>SUMMARY</u>

Plaintiffs move for an immediate temporary restraining order and, after a hearing, a preliminary injunction enjoining defendants from enforcing Article III, Sections 3 and 9 of the North Dakota state constitution and N.D. CENT CODE Chapter 16.1-01.09(3) and 16.1-01-12(1)(i) and (2)(a) to the extent they require that initiative petitions may only be circulated by a North Dakota elector on pain of Class A misdemeanor criminal liability (hereinafter the "Challenged Provisions").

The Challenged Provisions prohibit initiative and referendum sponsors from contracting and/or employing professional out-of-state petition circulators to collect signatures on their petitions required to secure access to the North Dakota statewide ballot, increasing costs and limiting the number of people they can reach. Conversely, out-of-state petition circulators are blocked from associating with likeminded North Dakotans to advance political change within the state.

Plaintiffs properly contend that the Challenged Provisions severely impair rights guaranteed to plaintiffs under the First and Fourteenth Amendments to the United States Constitution and are not narrowly tailored to advance a compelling governmental interest sufficient to save them from constitutional review.  The United States Court of Appeals for the Eighth Circuit has already established that North Dakota's blanket ban on out-of-state petition circulators is a severe burden on rights protected under the First Amendment.  Therefore, all that is left for this

Court to decide is whether the Challenged Provisions are narrowly tailored to advance a compelling governmental interest.  They are not.

As detailed in this brief, the vast weight of federal circuit and district court authority establish, to the point of being as close to black letter law as possible without binding Supreme Court precedent, that North Dakota's interests can be more narrowly protected by requiring out-of-state petition circulators to submit to the state's jurisdiction for purposes of any investigation, service of process and/or prosecution than a blanket ban on all out-of-state petition circulators.  North Dakota is well aware that the weight of federal authority directs that the blanket ban is not narrowly tailored and cannot withstand constitutional review as its own legislative council for the "Initiated and Referred Measures Study Commission" in March, 2018, sought to have the state constitution amended to permit out-of-state petition circulators to circulate initiative and referendum petitions upon submitting to the state's judicial authority and service of process – the exact process established by federal circuit and district court case law striking blanket out-of-state petition circulator bans down as unconstitutional as failing to be narrowly tailored to protect state interests, and the same remedy now sought by plaintiffs.

In addition to being very likely to succeed on the merits of their claims, the requested injunctive relief is supported by the irreparable harm, balance of the equities and public interest prongs of the test established under *Dataphase*.

Accordingly, plaintiffs respectfully submit they are clearly entitled to an immediate temporary restraining order and, after a hearing, preliminary injunctive relief. This is not a hard case. Plaintiffs invite defendants to enter into an immediate consent order to avoid unnecessary protracted litigation of this settled corner of constitutional law. Granting plaintiffs' their requested temporary restraining order may go a long way in convincing defendants to quickly give up the ghost on this rule which has been killed of in a long string of federal courts – but which still unnecessarily haunt plaintiffs in North Dakota.

## II.   <u>STANDARD OF REVIEW</u>

"[T]he standard for issuing either a temporary restraining order or a preliminary injunction in this circuit are set out in the seminal decision of *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 113 & n.5 (8th Cir. 1981) (en banc)." *See*, *Emineth v. Jaeger*, 901 F.Supp.2d 1138, 1141 (D.N.D. 2012). The factors this Court must consider in granting either a temporary restraining order or a preliminary injunction under *Dataphase* are: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probably that movant will succeed on the merits; and (4) the public interest."

All four factors must be considered and no one prong of the *Dataphase* test is dispositive. The burden of proving all four prongs of the *Dataphase* test is on

the movant.  *Id*.  When, as here, the moving party seeks a preliminary injunction against implementing a state statute, it must show that it "is likely to prevail on the merits" consistent with the *Dataphase* test.  *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731-32 (8th Cir. 2008) (en banc).

## III.   <u>ARGUMENT</u>

Plaintiffs satisfy all four prongs of the *Dataphase* test for their requested temporary restraining order and preliminary injunction.

### A.   <u>Plaintiffs are *very* likely to succeed on the merits of their claims</u>.

The Eighth Circuit has already established that North Dakota's blanket ban on out-of-state petition circulators impose a severe burden to rights guaranteed under the First and Fourth Amendments to the United States Constitution. *Initiative & Referendum Inst. v Jaeger*, 241 F.3d 614, 616-17 (8th Circuit 2001) (applying strict scrutiny review to North Dakota's proscription against nonresident initiative and referendum petition circulators).  However, the Eight Circuit never considered whether the ban was narrowly tailored to advance a compelling governmental interest where petition circulators can more narrowly be required to submit to the jurisdiction of North Dakota for any post-petition filing investigation, service of process and/or prosecution of any signatures collected by the out-of-state petition circulator.

Since the last time this Court considered the constitutionality of North Dakota's blanket ban on out-of-state circulators from circulating initiative and/or referendum petitions, the First, Third, Fourth, Sixth, Seventh, Ninth and Tenth Circuit courts of appeal have all decided in support of plaintiffs' ruling such bans are not narrowly tailored to advance a compelling governmental interest.

> **1.    A consensus has developed among federal courts that blanket bans on out-of-state petition circulators impose a severe burden on protected speech and are not narrowly <u>tailored to advance a compelling governmental interest</u>.**

In 1988, the United States Supreme Court held in *Meyer v. Grant* that a ban on paying petition circulators was unconstitutional reasoning that the circulation of a ballot access petition like a referendum petition involves interactive communication between the circulator and the potential signer which the Court described as "core political speech" meriting the highest protections under the First Amendments such that any restriction which decreased the pool of available circulators was subject to struct scrutiny analysis.  Following *Meyer*, the Supreme Court in *Buckley* upheld the Tenth Circuit Court of Appeals' decision holding the requirement in Colorado that petition circulators be registered voters unconstitutional as the requirement reduced the number of persons available to carry the message advanced by the petition sponsors and reduced the number of hours that could be worked and limited the number of persons the circulators could reach without impelling cause.  *Buckley*, 525 U.S. 193-197.

Using the same analysis employed by the United States Supreme Court in *Meyer* and *Buckley*, state residency requirements for petition circulators have been held unconstitutional by every Court of Appeals to consider the issue where out-of-state petition circulators can be required to submit to the jurisdiction of the subject state for purposes of the state's subpoena power for any post-filing investigation and/or prosecutions.   Because state residency requirements, by sheer force of the number of excluded individuals who reside outside Maine, drastically limit the pool of circulators available to carry the message of the petition proponents, a state can more narrowly protect its interest in policing against petition fraud by requirement that out-of-state circulators submit to the state's jurisdiction.

Beyond the sheer numbers, the reality is that professional circulators engage in the circulation of petitions on a nationwide basis.  Very often, the best petition circulators are not residents of the State of Maine, and certainly, no one state can claim to be the resident state of a majority of the best petition circulators in the United States.  Accordingly, any state ban on out-of-state petition circulators severely impairs the First Amendment right of petition proponents to field the best army of professional petition circulators possible.

The United States Court of Appeals for the Fourth Circuit, perhaps articulated the current state of the law on the unconstitutionality of out-of-state circulator bans best:

As the law has developed following the Supreme Court's decisions in *Meyer* and *Buckley*, a consensus has emerged that petitioning restrictions like the one at issue here are subject to strict scrutiny analysis.  *See*, *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023 (10th Cir. 2008) (applying strict scrutiny to overturn Oklahoma prohibition on nonresident circulators of initiative petitions); *Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008) (declaring unconstitutional, as failing strict scrutiny, Ohio ban on nonresidents circulating nominating petitions); *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008) (invalidating, pursuant to strict scrutiny analysis, Arizona deadline and residency provisions relating to nominating petitions and circulator-witnesses).  The Ninth Circuit in *Brewer* recited the general rule that "the severity of the burden the election law imposes on the plaintiff's rights dictates the level of scrutiny applied by the court." *Brewer*, 531 F.3d at 1034 (citing *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)… The triumvirate of 2008 decisions in *Savage*, *Blackwell*, and *Brewer* demonstrate a general agreement among our sister circuits that residency restrictions bearing on petition circulators and witnesses burden First Amendment rights in a sufficiently severe fashion to merit the closest examination….

[….]

The more substantial question, and the crux of this appeal, is whether the Commonwealth's enactment banning all nonresidents from witnessing nominating petitions – a measure we presume to be effective in combatting fraud – is, notwithstanding its efficacy, insufficiently tailored to constitutionally justify the burden it inflicts on the free exercise of First Amendment rights.  *See*, *Krislov v. Rednour*, 226 F.3d 851, 863 (7th Cir. 2000) ("[W]e must take into account…other, less restrictive means [the state] could reasonably employ[, though it] need not use the least restrictive means available, as long as its present method does not burden more speech than is necessary to serve compelling interests." (citations omitted).  The Board insists that the integrity of the petitioning process depends on 'state election officials access to the one person who can attest to the authenticity of potentially thousands of signatures," access made more difficult, perhaps, if the witness resides beyond the subpoena power of the state.

The plaintiffs counter that the Commonwealth could compel nonresidents, as a condition of witnessing signatures on nominating petitions, to enter into a binding legal agreement with the Commonwealth to comply with any civil or criminal subpoena that may

issue.  Indeed, "[f]ederal courts have generally looked with favor on requiring petition circulators to agree to submit to jurisdiction for purposes of subpoena enforcement, and the courts have viewed such a system to be a more narrowly tailored means than a residency requirement to achieve the same result."  *Brewer*, 531 F.3d at 1037 (citing inter alia, *Chandler v. City of Arvada*, 292 F.3d 1236, 1242-44 (10th Cir. 2002); *Krislov*, 226 F.3d at 866 n.7.  More recently, in *Savage*, the Tenth Circuit reiterated that "requiring non-residents to sign agreements providing their contact information and swearing to return in the event of a protest is a more narrowly tailored option."  550 F.3d at 1030.

According to the Board, ostensible consent to the extraterritorial reach of the Commonwealth's subpoena power does not guarantee the requisite access, because nonresident witnesses must yet be located and retrieved, perhaps by extradition or rendition.  There are few guarantees in life, however, and it is hardly an iron-clad proposition that a similarly situated resident witness will be amenable to service and comply with a lawfully issued subpoena.

*Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 316-18(4th Cir. 2013).

Following the Fourth Circuit's opinion in *Libertarian Party of Virginia* detailing the broad consensus that has developed among federal courts holding that strict scrutiny applies to bans on out of state circulators and that the blanket ban is not narrowly tailored to advance a state's legitimate interests other courts have followed the federal court consensus.  In *Green Party of Pennsylvania v. Aichele*, 89 F.Supp. 3d. 723 (E.D. Pa 2015) Judge Dalzell preliminarily enjoined enforcement of the ban on out-of-state circulators for third party candidate nominating petition based on the Fourth Circuit's analysis that out-of-state circulator bans impose a severe burden to First Amendment speech triggering strict scrutiny analysis and holding that a blanket ban on out-of-state circulators was not

narrowly tailored when the state could more narrowly require out-of-state circulators to accept the state's jurisdiction for any post-filing process. *Green Party of Pennsylvania*, 89 F.Supp.3d. at 739-40. Thereafter, Judge Dalzell permanently enjoined the out-of-state ban as unconstitutional. Judge Dalzell found the out-of-state circulator ban "sharply limits the reach of the Green Party plaintiffs' message" and "the Green Party plaintiffs have, like their Virginia colleagues, offered to subject out-of-state circulators to the jurisdiction of Pennsylvania courts 'for the express purpose of any investigative and/or judicial procedure with respect to any alleged violation(s) of Pennsylvania election law.'" *Id*. at 742.

In *Libertarian Party of Connecticut v. Merrill*, 2016 WL 10405920 (D. Conn., Jan. 26, 2016) Judge Hall held Connecticut's out-of-state circulator ban for third party candidate nominating petitions unconstitutional, finding the out-of-state circulator ban to severely impair plaintiff's First Amendment rights, that strict scrutiny applied, and that the ban was not narrowly tailored to protect the state's important interests. *Libertarian Party of Connecticut* at *5-8. Shortly thereafter, Judge Hall issued a temporary restraining order against Connecticut's out-of-state circulator ban for circulators of major party nominating petitions. *Wilmoth v. Merrill*, 2016 WL 829866 (D. Conn. Mar. 1, 2016). Following the district court's temporary restraining order, the State of Connecticut settled the action agreeing to

permanently refrain from enforcing Connecticut's out-of-state circulator ban for circulators of major party candidate nominating petitions.[1]  Also in 2016, in *OpenPittsburgh,Org v. Wolosik*, 2016 WL 7985286 (W.D. Pa. Aug. 9, 2016) the United States District Court for the Western District of Pennsylvania, issued a preliminary injunction against Pennsylvania's out-of-state ban on circulators of referendum petitions to amend Home Rule Charters that govern certain Pennsylvania municipalities.  Judge Hornak found the out-of-state circulator ban imposed a severe restriction on protected First Amendment speech, strict scrutiny applied, and the ban was not narrowly tailored to advance the Commonwealth's interest when out-of-state circulators could more narrowly submit to the jurisdiction of the Commonwealth rather than the unconstitutional blanket ban on out-of-state circulators.  *Id*. at *1-3.

The Third Circuit finally had occasion to review out-of-state circulator bans in 2018, when it reversed a New Jersey district court grant of a motion to dismiss challenging New Jersey's out-of-state circulator ban for circulators of major party candidate nominating petitions. The Third Circuit held that out-of-state circulator bans severely impair First Amendment speech which triggered strict scrutiny analysis. *Wilmoth v. Secretary of State of New Jersey*, 731 Fed. Appx 97, 101-105

---

[1] Plaintiffs' counsel in this action was counsel for the Plaintiff in *Wilmoth v. Merrill* and has first hand knowledge of the settlement terms in that action.

(3rd Cir., Apr. 19, 2018). In its unpublished opinion, the Third Circuit panel explained that: "Our *Anderson-Burdick* inquiry in the instant case is quite straightforward.  Since the turn of the century, 'a consensus has emerged' that laws imposing residency restrictions upon circulators of nomination petitions "are subject to strict scrutiny analysis."  *Id*. citing *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 316-17 (4th Cir, 2013); *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1030-31 (10th Cir. 2008); *Nader v. Blackwell*, 545 F.3d 459, 475-76 (6th Cir. 2008); *Nader v. Brewer*, 531 F.3d 1028, 1038 (9th Cir. 2008).  Again, in Pennsylvania, Judge Kane of the United States District Court for the Middle District of Pennsylvania, held that Pennsylvania's ban on out-of-state circulators for major party candidate nomination petitions was unconstitutional as applied to out-of-state party members willing to submit to the jurisdiction of the Commonwealth.  *See Benezet Consulting, LLC v. Boockvar*, 433 F.Supp.3d 670 (M.D. Pa. 2020).

    More recently, the United States Court of Appeals for the First Circuit upheld the decision of the district court of Maine enjoining Maine's ban on out-of-state petition circulators in *We the People PAC et al., v. Dunlap et al.*, 40 F.4th 1 (1st Cir. 2022) (upholding district court's order granting preliminary injunctive relief banning state officials from enforcing Maine's ban on out-of-state petition circulators for initiative and referendum petitions, 519 F.Supp.3d 13 (D. Me.

2021)), a decision which overturned the district court's prior decision upholding Maine's ban on out-of-state petition circulators – a decision cited by the Eight Circuit in its own early decision in *Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614 (8th Cir. 2001), upholding North Dakota's own ban.

In *Pierce v. Stapleton*, 505 F.Supp.3d 1059 (D. Mont. 2020), a Montana district judge, seeking to force petition sponsors to hire unemployed Montana residents to circulate their petitions, was overruled by the Ninth Circuit, upholding circuit precedent in *Nader v. Brewer*, that a blanket ban on out-of-state petition circulators impose a severe burden on First Amendment speech and is not narrowly tailored to advance a compelling governmental interest when out-of-state petition circulators can more narrowly be required to submit to the state's jurisdiction.  *See*, *Pierce v. Jacobsen*, 44 F.4th 853 (9th Cir. 2022) (overruling district court's denial of plaintiffs' motion for summary judgment declaring and enjoining out-of-state petition circulator ban as unconstitutional under the First and Fourteenth Amendments to the United States Constitution).

Given the weight of federal district and circuit court authority, there is simply no longer any cognizable argument that the Challenged Provisions in this case can pass constitutional muster.

2. **Precedent within the Eighth Circuit support plaintiffs' <u>claims</u>.**

As noted above, the Eighth's Circuit decision in *Initiative & Referendum Institute* established that bans on out-of-state circulators do, in fact, impose a severe burden on protected First Amendment speech and are subject to strict scrutiny review. While the Eighth Circuit was not presented with a record showing that states can more narrowly protect their legitimate interests by simply requiring out-of-state petition circulators to submit to the state's jurisdiction as a more narrow means to protect the state's interests, the Nebraska district court was so presented with such an option and, like virtually every other federal circuit and district court, determined that, the blanket ban on out-of-state petition circulators was not narrowly tailored to advance Nebraska's interest and struck the ban down as unconstitutional. *See*, *Citizens in Charge v. Gale*, 810 F.Supp.2d 916 (D. Neb. 2011). Interestingly, the Nebraska defendants, despite the prior decision by the Eighth Circuit in *Initiative & Referendum Institute*, did not appeal the decision of the Nebraska district court to the court of appeals, and allowed the decision stand.

More recently, the Eighth Circuit upheld the South Dakota's district court's decision to preliminarily enjoin, as unconstitutional, South Dakota's law containing a ban on out-of-state petition circulators as facially unconstitutional under the First Amendment as part of a challenge to other ballot access restrictions contained in the law. *Dakotans for Health v. Noem*, 52 F.4th 381 (8th Cir. 2022). The entire law was enjoined as not being severable. While the courts did not

directly address South Dakota's ban on out-of-state petition circulators, the Eighth

Circuit, in its analysis, found South Dakota's interest in ballot integrity, while

legitimate and important, to be easily satisfied under exacting scrutiny analysis,

without the need to impose the array of challenged restrictions held to be not

narrowly tailored to protect the interest.  As explained by the Court:

> "To withstand this scrutiny, the strength of the governmental interest
> must reflect the seriousness of the actual burden on First Amendment
> rights. But this is just part of the analysis.  Though 'exacting scrutiny
> does not require that disclosure regimes by the least restrictive means
> of achieving their ends, it does require that they be narrowly tailored to
> the government's asserted interest.'
> [….]
> More importantly, for purposes of exacting scrutiny, while the State's
> interests are strong, they do not stand in isolation to justify any
> regulatory scheme it puts forward.  Rather, the statute itself must be
> narrowly tailored to meet these asserted interests.  'A substantial
> relation to an important interest is not enough to save a disclosure
> regime that is insufficiently tailored.'  'Narrow tailoring is crucial
> where First Amendment activity is chilled – even if indirectly – because
> First Amendment freedoms need breathing space to survive.'
>
> (internal citations omitted)

*Dakotans for Health*, 52 F.4th at 389, 391.

The Court's analysis in *Dakotans for Health* is clearly consistent with the

work of virtually every other district and circuit court in their analysis as to

whether blanket a ban on out-of-state petition circulators are narrowly tailored to

advance the state's interest in petition integrity.  Accordingly, the narrower

requirement to submit to the state's jurisdiction rather than the imposition of a

blanket ban on out-of-state circulators seems to be clearly within the circuit court's analytical framework and consistent with the work of every other circuit court that blanket bans on out-of-state circulators are not narrowly tailored to protect a state's interest in the integrity of the petition process.

Unlike the plaintiffs in *Initiative & Referendum Institute*, plaintiffs in this action expressly declare that they are either willing to submit to the jurisdiction of North Dakota to be able to circulate plaintiffs' initiative petition or will only hire out-of-state professional petition circulators who will submit to North Dakota's jurisdiction and service of process in order to circulate Plaintiff Retire Congress North Dakota's initiative petition. *See*, Exhibit A, Decl. of Hendrix at p.5, ¶21; Exhibit B, Decl. of Jacob at p.6, ¶¶21, 22; Exhibit C, Decl. of Pool at p.4, ¶¶16-19. Accordingly, Eighth Circuit precedent presents no barrier to plaintiffs' instant request for injunctive relief.

> **3.** **North Dakota legislative commission recommended amendment of state constitution to permit out-of-state <u>circulators who submit to North Dakota jurisdiction</u>.**

The North Dakota state legislature (based probably on the weight of federal circuit and district court authority that blanket bans on out-of-state petition circulators fail constitutional scrutiny and a desire to avoid this litigation) authorized the formation of the "Initiated and Referred Measures Study Commission." (hereinafter, the "Commission"} Attached as Exhibit E.  The

Commission, in turn, recommended that Section 3 of Article III of the state constitution be amended to provide that: "A petition may be circulated only by an individual who is at least eighteen years of age and agrees to accept the jurisdiction of North Dakota state courts and service of process in this state."  Attached as Exhibit F.  Unfortunately, this effort to amend the state constitution to bring it into federal constitutional compliance failed.  However, it seems obvious that the political class in North Dakota is well aware that the Challenged Provisions run afoul of the modern understanding of what is required under the First and Fourteenth Amendments to the United States Constitution.

Accordingly, it seems clear that plaintiffs are very likely to succeed on the merits of their claims sufficient to satisfy the requirement for an immediate temporary restraining order and, after a hearing, a preliminary injunction during the pendency of this litigation.

**B.**   **Without a temporary restraining order and/or preliminary injunction, plaintiffs face irreparable harm: the inability to employ professional out-of-state petition circulators able to both collect signatures in a more economical and efficient manner and to extend the geographic reach of their petition drive within the <u>time permitted under state statute</u>.**

In *Dakota Rural Action v. Noem*, 416 F.Supp.3d 874 (D.S.D. 2019), the district court recognized that the irreparable harm requirement for injunctive relief is "clear and substantial" where a state stature impairs the ability of the movant to engage in the necessary "planning and seeking of public support [which] must take

place now." *Dakota Rural Action*, 416 F.Supp.3d at 892.  In the instant action,

plaintiffs are prohibited by the Challenged Provisions from employing and/or

contracting with out-of-state professional petition circulators, with the unique skills

lacking from in-state North Dakota residents, during the time-frame, established by

North Dakota laws to collect petition signatures necessary to secure access to

North Dakota's statewide ballot. In order to secure access for the June ballot,

plaintiffs are required to collect their signatures and file their petitions no later than

February 12, 2024, in order to qualify for the statewide primary ballot.  Plaintiffs

are required to work within North Dakota's specific timeframe.  Accordingly,

failure to grant the requested injunctive relief will cause plaintiffs' irreparable

harm to the clearly established right to associate with and choose to contract with

the out-of-state professional petition circulators of their choice – NOW, not a year

from now – under the First and Fourteenth Amendments under the United States

Constitution.  Any delay in vindicating and connecting plaintiffs to their rights

under the First Amendment is irreparable harm.

To be frank, the 2018 proposal from the Initiated and Referred Measures

Study Commission to amend Article III, Section 3 of the state constitution to do

exactly what plaintiffs now petition this Court to accomplish demonstrates that

North Dakota and defendants know full well that their continued enforcement of

the Challenged Provisions violate fundamental constitutional rights – and they just

do not care.  This is irreparable harm, and arrogance, at the highest levels of North Dakota and should not be countenanced by this Court for one day longer.

The foregoing is fully consistent with recognized precedent that: "The loss of First Amendment rights, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 353 (1976).  Thus, in the context of an alleged violation of First Amendment rights, a plaintiffs' claimed irreparable harm is "inseparably linked" to the likelihood of success on the merits of plaintiffs' First Amendment claims.  *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7 (2008).

Furthermore, the declarations attached hereto, detail an additional litany of specific irreparable harms visited upon initiative sponsors as a direct and proximate result of the Challenged Provisions.  *See*, Exhibits A, B, C & D.

### C.   <u>Balance of the equities clearly favor granting the requested relief.</u>

While plaintiffs will continue to suffer irreparable harm to rights guaranteed to them under the First Amendment if the injunctive relief is not granted, defendants will suffer no harm if the relief is granted.  The requested relief will place defendants in the same position as all the other states where blanket bans have been ruled unconstitutional allowing them, instead, of the option to require out-of-state petition circulators to execute an affidavit submitting to the jurisdiction of North Dakota court's and in-state service of process.

Further, the requested relief will have no impact on state-imposed deadlines to file petitions necessary to qualify for the statewide ballot and to allow defendants sufficient time to prepare the ballot.  Accordingly, the balance of the equities favor granting plaintiffs' requested relief.

###    D.    The public interest favors granting the requested injunctive relief.

The public interest is served by defendants conforming their conduct within the boundary lines of the federal constitution.  As stated by Judge Hornak of the Western District of Pennsylvania in *OpenPittsburgh.Org v. Wolosik*, 2016 WL 7985286 (W.D. Pa. Aug. 9, 2016):

> Though the public has a strong interest in the efficient regulation and processing of referendum petitioners, the public also has a strong interest in ensuring that referendum petitioners are not confronted with unconstitutional barriers, thereby impacting their speech and the choices that "[t]he health and well-being of a democracy depends upon choice at the ballot box," and it is strongly in the public's interest to ensure that this choice is not unconstitutionally restricted.  The balance of the public's interest favors the granting of an injunction against the enforcement of residency and registration requirements for circulators.

*OpenPittsburgh.Org*, at *4.  Accordingly, the public interest prong militates in support of this Court granting plaintiffs' requested temporary restraining order and preliminary injunction.

## IV.    CONCLUSION

Accordingly, for all the foregoing stated reasons, the Challenged Provisions are unconstitutional as they impose a severe burden on First Amendment speech

and are clearly not narrowly tailored to advance a compelling governmental interest.  Frankly, there is no cognizable argument that can be made in opposition to plaintiffs' claims and their request for an immediate temporary restraining order and, after a hearing, a preliminary injunction should be granted.

The Eighth Circuit has already established that the Challenged Provisions impose a severe burden on First Amendment speech, without deciding whether the Challenged Provisions are narrowly tailored to advance a compelling governmental interest.  However, since the Eighth Circuit last visited the constitutionality of blanket bans on out-of-state petition circulators, no federal circuit court has failed to determine that blanket bans on out-of-state petition circulators are not narrowly tailored to advance a state's legitimate interest.

Accordingly, plaintiffs respectfully request this court to immediately grant their request for a temporary restraining order and, after a hearing, the requested preliminary injunction.

Respectfully submitted

Dated:  October 3, 2023          __/s/ **Paul A. Rossi**_____
Paul A. Rossi
*Counsel to all Plaintiffs*
IMPG Advocates
316 Hill Street
Suite 1020
Mountville, PA  17554
717.961.8978
Paul-Rossi@comcast.net

21

## CERTIFICATE OF SERVICE

Plaintiffs, by and through their undersigned legal counsel, hereby certify that

on this date, defendants have each been served, via U.S.P.S. Express Mail, two true

and correct copies of: (1) Plaintiffs' Motion for Temporary Restraining Order and

Preliminary Injunction; (2) the foregoing brief in support; and (3) exhibits A

through F attached to plaintiffs' brief in support.

Defendants have been served at the following addresses:

Defendant Michael Howe                   Defendant Drew Wrigley
600 East Boulevard Avenue                600 East Boulevard Avenue
Department 108                           Department 125
Bismark, ND  58505                       Bismark, ND  58505


Dated:  October 3, 2023              __/s/ Paul A. Rossi_____
                                     Paul A. Rossi
                                     *Counsel to all Plaintiffs*
                                     IMPG Advocates
                                     316 Hill Street
                                     Suite 1020
                                     Mountville, PA  17554
                                     717.961.8978
                                     Paul-Rossi@comcast.net