IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

Case No: 1:23-cv-00185-DLH-CRH

| | | |
|---|---|---|
| JARED HENDRIX; RETIRE CONGRESS NORTH DAKOTA; LIBERTY INITIATIVE FUND; TRENTON POOL; and ACCELEVATE 2020, LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | **DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER** |
| MICHAEL HOWE, in his official capacity as Secretary of State of North Dakota; and DREW WRIGLEY, in his official capacity as The Attorney General of the State of North Dakota, | ) ) ) ) ) ) | |
| Defendants. | ) | |

***          ***          ***

## I.      INTRODUCTION

Plaintiffs have brought suit seeking injunctive relief and a declaration that Article III, Sections 3 and 9 of the Constitution of North Dakota, N.D.C.C. § 16.1-01-09(3), and N.D.C.C. § 16.1-01-12(1)(i) and (2)(a) are unconstitutional to the extent they require circulators of initiative petitions to be electors or qualified electors (hereinafter residents).  Despite the fact the Eighth Circuit Court of Appeals has already upheld the constitutionality of the challenged provisions, Plaintiffs have moved for a temporary restraining order and preliminary injunction.  Initiative & Referendum Institute v. Jaeger, 241 F.3d 614, 618 (8th Cir. 2001) ("there are no constitutional infirmities with the North Dakota laws requiring petition circulators to be state residents . . ..").

Defendants request Plaintiffs' motion for a temporary restraining order be denied.[1]

## II.     FACTS AND RELEVANT LEGAL HISTORY

Given the Eighth Circuit has already clearly and unambiguously determined the challenged provisions are constitutional, a detailed description of the facts is unnecessary. Summarily, for purposes of responding to Plaintiffs' request for a temporary restraining order only, Defendants will presume that Plaintiffs Jared Hendrix and Retire Congress North Dakota desire to hire non-resident petition circulators and Plaintiffs Trenton Pool and Accelevate 2020, L.L.C. are, or employ, non-residents who want to engage directly in circulating petitions. Such actions would be a violation of North Dakota law.

Nothing has materially or relevantly changed with respect to the relevant statutory or constitutional provisions since the Eighth Circuit explained:

> In 1914, North Dakota's Constitution was amended, reserving the right of the people to initiate legislation. In the last two decades, certain measures have been enacted regarding the North Dakota initiative process. In 1979, the North Dakota Constitution was amended to provide that only "qualified electors" could circulate initiative petitions. The North Dakota statutes define a "qualified elector" as "a citizen of the United States who is 18 years of age or older [and] a resident of this state" who has resided in the precinct for 30 days. N.D.Cent.Code § 16.1-01-04(1) (1997).

Jaeger, 214 F.3d at 615-16; see also N.D. Const. Art. III, §§ 3 & 9, N.D.C.C. § 16.1-01-04, N.D.C.C. § 16.1-01-09(3); N.D.C.C. § 16.1-01-12(1)(i) and (2)(a) (still requiring circulators to be residents of North Dakota and providing compliance and enforcement mechanisms without any material change to the challenged requirement).

---

[1] Defendants are submitting this response to address the request for a temporary restraining order. Defendants are still in the process of gathering information and preparing a response to the Complaint and motion for a preliminary injunction. This response is not intended to encompass the entirety of Defendants' position or arguments in response to Plaintiffs' Complaint.

Similar to the present case, in <u>Jaeger</u> the plaintiffs challenged the requirement that petition circulators must be North Dakota residents.  <u>Jaeger</u>, 214 F.3d at 615.  Just like the present case, the plaintiffs in <u>Jaeger</u> were non-profits involved in the initiative process; a for-profit business involved in qualifying proposed initiatives for the ballot; a non-resident who would like to circulate petitions in North Dakota; and a North Dakota resident who would prefer to pay petition circulators.  <u>Id.</u> at 616.  The Eighth Circuit conducted an "independent analysis as to the residency requirement's constitutionality."  <u>Id.</u>

The Eighth Circuit evaluated whether the residency requirement burdened First Amendment rights by making it more costly and time consuming to collect signatures and preventing non-North Dakota residents from engaging in political speech by forbidding them from circulating petitions.  <u>Id.</u> at 617.  Both arguments, after independent review, were rejected by the Eighth Circuit.  <u>Id.</u> at 616-17.  The Eighth Circuit clearly held "**<u>As the State has a compelling interest in preventing fraud and the regulation does not unduly restrict speech, we conclude that the residency requirement is constitutional.</u>**"  <u>Id.</u> at 616.  Based on this binding and controlling precedent alone, Plaintiffs' motion for a temporary restraining order must be denied.

## III.    LAW AND ARGUMENT

"[I]t is well-established the court is required to consider the factors set forth in <u>Dataphase Systems, Inc. v. C.L. Systems, Inc.</u>, 640 F.2d 109, 114 (8th Cir. 1981) in determining whether a temporary restraining order should be granted."  <u>Kersten v. City of Mandan</u>, 389 F.Supp. 640, 645 (D.N.D. 2019).  In <u>Dataphase</u>, the Eighth Circuit set forth the following four factors for consideration: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the

probability that movant will succeed on the merits; and (4) the public interest." <u>Dataphase Systems, Inc.</u>, 640 F.2d at 114.  "The burden of establishing the propriety of a preliminary injunction is on the movant."  <u>Baker Elec., Co-op., Inc. v. Chaske</u>, 28 F.3d 1466, 1472 (8th Cir. 1994). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction."  <u>Id</u>.  However, the Eighth Circuit has found the likelihood of success on the merits to be the most significant factor to consider in considering preliminary injunctive relief.  <u>S & M Constructors, Inv. v. Foley Co.</u>, 959 F.2d 97, 98 (8th Cir. 1992) ("…we consider the four factors that are employed by the district court in considering preliminary injunctive relief, of which we believe the likelihood of success on the merits is most significant.").

With controlling precedent establishing the constitutionality of the challenged provisions, Plaintiffs cannot establish entitlement to a temporary restraining order.

### A.    Plaintiffs are not likely to succeed on the merits.

While acknowledging the existence of <u>Jaeger</u> declaring the resident requirement constitutional, Plaintiffs assert it does not matter because other courts (evaluating different circumstances) have found issue with other jurisdictions' residency requirements.  There can be little doubt <u>Jaeger</u> is binding precedent, and indeed, Plaintiffs have not cited any authority indicating it has been reversed.  On this basis alone, Plaintiffs cannot establish a likelihood of success on the merits and their motion for a temporary restraining order should be denied.  The same reasons supporting the Eighth Circuit's prior decision exist today.

Even with the binding precedent, Defendants must respond to a few of Plaintiffs' arguments at this time.  Plaintiffs inaccurately contend the Initiated and Referred Measures Study Commission (Commission), which was established by the Legislative Assembly for the 2017-

2018 interim period between legislative sessions, recommended amending the state constitution to permit non-resident circulators who submit to North Dakota's jurisdiction due to constitutional concerns of the Commission.  Plaintiffs' Brief at p. 16-17.  However, the record of the Commission's work clearly shows that did not occur, and Plaintiffs' misrepresentation of the Commission's proceedings is concerning.  Attached as Ex. 1 hereto are the interim committee meeting minutes from March 20, 2018.  The minutes reflect a resolution draft (a copy of which was submitted with Plaintiffs' motion) regarding nonresident petition circulators.  Ex. 1 at p. 3-4.  However, there was no discussion or acknowledgment that the committee believed the residence requirement was unconstitutional.  Instead, the minutes reflect the Secretary of State (at the time) expressed concerns about nonresidents who make a living circulating petitions and informed the Commission the Eighth Circuit had upheld the requirement that petition circulators be residents. Id. at p. 3.  Moreover, at its meeting on May 22, 2018, the interim committee voted 12-2 **not to approve** the resolution draft relating to nonresident petition circulators attached to Plaintiffs' motion (Doc. 8-6).  Ex. 2 at p. 5.  Plaintiffs' assertion that the interim Commission recommended a change to the state constitution based on constitutional concerns is wholly inaccurate.  While evaluating this request for a temporary restraining order in light of controlling precedent, this inaccuracy should cause the Court concern about the accuracy of all of Plaintiffs' representations, including extremely speculative statements, at this early stage.

Plaintiffs claim Jaeger should be ignored because they will agree to submit to the jurisdiction of North Dakota for any post-petition filing investigation, service of process and/or prosecution of any signatures collected by the out-of-state petition circulator.  Notably, while Plaintiffs assert they will agree to the condition and will only hire those who agree with it, they provide no specifics about how this will actually function or satisfy the State's concerns in light

of Eighth Circuit precedent already determining "[t]he one restriction is that out-of-state residents cannot personally collect and verify the signatures, and that restriction is justified by the State's interest in preventing fraud."  Jaeger, 241 F.3d at 617.  The Eighth Circuit has already determined the challenged provisions do not create an undue burden, and as a result, Plaintiffs' argument is irrelevant.

### B.  Plaintiffs do not face irreparable harm.

As an initial matter, Plaintiffs cannot establish irreparable harm because the challenged provisions have been held constitutional by the Eighth Circuit.  While Plaintiffs may desire to use out-of-state petition circulators, their mere assertions (without any specifics or supporting evidence besides their own statements) that out-of-state circulators are uniquely skilled and will obtain more signatures per hour are simply not sufficient to show irreparable harm.  While the State takes no position whatsoever on the substance of the proposed measure, it is certainly at least plausible the failure to garner the number of signatures Plaintiffs desire at this point is due to lack of interest by the public or lack of effort by resident petition circulators.  In light of Jaeger holding the resident requirement is constitutional, Plaintiffs' mere belief they can get more signatures using nonresident circulators cannot create sufficient irreparable harm to justify preliminary relief in the form of a temporary restraining order.  As recognized in Plaintiffs' brief, irreparable harm is "inseparably linked" to the likelihood of success on the merits.  *Plaintiffs' Brief* at 19.  Plaintiffs cannot establish irreparable harm because they cannot establish a likelihood of success on the merits when challenging provisions that have already been held constitutional in this Circuit.

C.     **The balance of equities.**

The balance of equities also does not favor preliminary relief.  In the face of controlling precedent declaring the challenged provisions constitutional, it is not equitable to enter preliminary relief ignoring that precedent and changing longstanding law.

D.     **The public interest does not favor granting the requested injunctive relief.**

For the reasons explained above, controlling precedent has determined the challenged provisions are constitutional.  No public interest is served by granting preliminary relief contrary to that precedent.  The public interest in orderly, fair, and reliable elections, however, would be undermined by abruptly changing applicable law in the middle of a petition cycle.  Defendants have longstanding practices and procedures in place under the law to ensure that same public interest is served, and a sudden elimination of some of those practices and procedures would open the door to confusion and loss of public confidence in the petition process and subsequent election.

## IV.     CONCLUSION

For the foregoing reasons, Defendants request Plaintiffs' motion be denied.

Dated this 4th day of October, 2023.

By  */s/ Mitchell D. Armstrong*
        Mitchell D. Armstrong (Bar ID #05892)
        marmstrong@smithporsborg.com
        Special Assistant Attorney General
        122 East Broadway Avenue
        P.O. Box 460
        Bismarck, ND 58502-0460
        (701) 258-0630

        Attorney for Defendants Michael Howe, in his official capacity as Secretary of State of North Dakota; and Drew Wrigley, in his official capacity as The Attorney General of the State of North Dakota

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of October, 2023, a true and correct copy of the foregoing **DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER** was filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to the following:

Paul A Rossi, Esq.                     paul-rossi@comcast.net
Attorney at Law
316 Hill Street
Suite 1020
Mountville, PA 17554

By */s/ Mitchell D. Armstrong*
   MITCHELL D. ARMSTRONG