## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| JARED HENDRIX; RETIRE CONGRESS NORTH DAKOTA; LIBERTY INITIATIVE FUND; TRENTON POOL; and, ACCELEVATE 2020, LLC., | : <br> : CIVIL ACTION <br> : # 1:23-cv-00185-DLH-CRH <br> : |
| Plaintiffs, | : Judge Daniel L. Hovland <br> : |
| vs. | : Plaintiffs' Reply Brief in Support of <br> : Plaintiffs' Motion for Temporary <br> : Restraining Order & Preliminary |
| MICHAEL HOWE, in his official capacity as the Secretary of State of North Dakota; and DREW WRIGLEY, in his official capacity as The Attorney General of the state of North Dakota, | : Injunction <br> : <br> : <br> : <br> : |
| | : *Filed Electronically* |
| Defendants. | : |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION**

I.       **Plaintiffs' Reply to Defendants' Brief in Opposition**

A.       ***Jaeger* in Distinguishable and Does Not Control this Action.**

Oddly, the paucity of defendants' brief in opposition actually supports granting plaintiffs'

request for a temporary restraining order and, after a hearing, a preliminary injunction, both in

what defendants argue and in what defendants fail to address in the over 12 pages of argument

defendants could not fill in support of their opposition.

While the Eighth Circuit's opinion in *Initiative & Referendum Institute v. Jaeger*, 241

F.3d 614 (8th Cir. 2001)  controls the determination that North Dakota's blanket ban on out-of-

state petition circulators for initiative and referendum petition imposes a severe burden on First

Amendment speech, that court failed to determine if the law was narrowly tailored to advance

the state's legitimate interests – primarily because the litigants in that case failed to create the

record that every other federal circuit and district court had before it following the loss in the

Eighth Circuit.  Simply stated, the constitutional Bar learned from the mistakes of plaintiffs in

*Jaeger* and have taken care to create the record necessary for courts to conduct a full

constitutional analysis under the First Amendment.  The United States Supreme Court requires

this court to conduct that analysis, and if this Court, determines the law is not narrowly tailored

to protect the state's interest, and if the rest of the *Dataphase* prongs are satisfied (which

plaintiffs strongly argue they are), then plaintiffs are entitled to the requested temporary and

preliminary injunctive relief.  That is an analysis defendants are desperate to avoid which is why

they seek to hide behind the final result of *Jaeger*, because they cannot win that argument.  By

plaintiffs' count, since *Jaeger*, at least 22 different state attorney generals and/or district

attorneys have attempted to argue that their blanket ban on out-of-state petition circulators was

narrowly tailored to advance their state's interest and have ultimately lost, either at the district court level or, finally, on appeal to their federal circuit court of appeals.

The United States Supreme Court mandates that "when there is a heavy burden or discrimination with reference to these rights, the regulation must be narrowly drawn and there must be a compelling interest." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *see also*, *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).  Under the *Anderson-Burdick* test the court must first determine whether there is a burden on First Amendment speech; if the answer is no, the inquiry stops, if yes, then the court must determine if it is narrowly tailored to protect a state's compelling interest.  *Anderson*, 460 U.S. at 789; *Burdick*, 504 U.S. at 434.  The first part of this test has been decided by the Eighth Circuit's decision in *Jaeger*, the burden on First Amendment rights is severe.  It is the second part of the test which the Eighth Circuit did not decide which this court "must" determine – is North Dakota's blanket ban narrowly tailored to advance the state's interest.  That answer is no, as evidenced by the cases cited in plaintiffs' brief in support. Defendants essentially argue, without expressly stating, that this Court is somehow foreclosed from conducting the second part of the *Anderson-Burdick* test mandated by the United States Supreme Court, just because the Eighth Circuit failed to do so, or did not have the record in front of it (that this court does have), in *Jaeger*, 22 years ago.

More to the point, defendants' brief in opposition fails distinguish this case, or the North Dakota ban on out-of-state circulators from any of the cases cited in plaintiffs' brief in support, or why those cases where wrongly decided on the issue that blanket bans on out-of-state circulators are not narrowly tailored to advance the state's interests.  While, plaintiffs understand that would be a nearly impossible legal task for defendants to accomplish, they nevertheless fail

to even take a stab at countering plaintiffs' arguments, or provide this Court any basis to resolve

the issue any differently than every other federal circuit court since *Jaeger*.

In *Citizens in Charge v. Gale*, 810 F.Supp.2d 916 (2011) The United States District Court

for the District of Nebraska found itself in a nearly identical position that is now presented to this

Court.  Defendant in that case argued to the Court that *Jaeger*, controlled the challenge to

Nebraska's own ban on out-of-state petition circulators.  The *Citizens in Charge* court explained:

> However, defendant argues that *Jaeger* is dispositive of this case. Defendant contends the
> Eighth Circuit Court of Appeals in *Jaeger* found that the North Dakota residency
> requirement, which had a law similar to the one in this case, was valid.  The Eighth Circuit
> noted that *Buckley* struck down the voter registration requirement but was not asked whether
> the residency requirement for petition circulators were permissible.  The Eighth Circuit
> based its finding in part by determining that North Dakota had a compelling interest in
> preventing fraud. The court in *Jaeger* did not specifically determine if the residency
> requirement was narrowly tailored….Defendant relies on *Jaeger* and asks the court find it
> dispositive on the claims in this case. The court disagrees and finds that *Jaeger* does not
> control on this issue.  During the preliminary injunction hearing, the court determined that
> *Jaeger* would most likely apply.  However, the court had received insufficient evidence at
> that time and *Jaeger* appeared to control. Following the submission of evidence and
> argument, the court believes that *Jaeger* is distinguishable.  The Eighth Circuit in *Jaeger*
> specifically stated that there was "no evidence in the record" of the alleged burden associated
> with the ban.  The court believes that the plaintiffs and intervenors have met their burden in
> this regard. The plaintiffs and intervenors have offered evidence of increased costs; evidence
> of the ability of trained solicitors to come in and do the job in the time permitted, and how
> training new solicitors is an increased cost burden; offered evidence as to the reduction of
> the available pool of circulators if only in-state petitioners are used; offered evidence as to
> the lack of any petition firms in the State of Nebraska….; the Libertarian Party showed that
> there are very few instances of fraud in Nebraska, and only one in the last 15 years by
> someone from out of state….Moreover, the court finds that there are less restrictive ways to
> meet the ability to subpoena out-of-state residents, such as a consent to jurisdiction
> requirement, or by an affidavit containing the necessary personal and geographical
> information.  *See Buckley v. American Constitutional Law Found., Inc.*, 525 U.S. 182, 196
> (1999)("the interest in reaching law violators…is served by the requirement…that each
> circulator submit an affidavit setting out, among several particulars, the address at which he
> or she resides, including the street name and number, the city or town, [and] the county.").
> *Buckley* clearly articulates that this is a less restrictive means for obtaining jurisdiction over
> out-of-state petitioners.  Other courts of appeals have held that the consent to jurisdiction
> option is clearly a less restrictive alternative than the residency requirement.

*Citizens in Charge*, 810 F.Supp.2d at 925-27 (unnecessary internal citations omitted).

First, it is a manifest truth that the North Dakota ban on out-of-state circulators drastically

reduces the pool of available petition circulators as it excluds 259 million U.S. citizens over the

age of 18 from associating with plaintiffs to effect political change in North Dakota.  That

reduction in the pool of voices is a severe burden, on speech, in and of itself.  The Supreme

Court in *Buckley* concluded that the voter registration requirement reduced the number of

persons, both volunteer and paid circulators, that would be in the pool to circulate petitions.  The

Court explained:

> The requirement that circulators be not merely voter eligible, but registered voters, it is
> scarcely debatable given the uncontested numbers…decreases the pool of potential
> circulators as certainly as that pool is decreased by the prohibition of payment to circulators.
> Both provisions 'limit the number of voices who will convey [the initiative proponents]
> message' and, consequently, cut down 'the size of the audience [proponents] can reach.'…In
> this case, as in *Meyer* [*v. Grant*, 486 U.S. 414, 428 (1988)], the requirement "imposes a
> burden on political expression that the State has failed to justify.

*Buckley*, 525 U.S. at 194-95 (unnecessary internal citation omitted).  *Buckley*, as noted above

provides that submission to the state's jurisdiction is a narrower method to protect the state's

interest.  Virtually every circuit and district court case, and cited in plaintiffs' brief in support,

focus on the reduction of the pool of available circulators as triggering strict scrutiny analysis.

Further, in this case, plaintiffs have produced declarations evincing additional burdens on

speech caused by the ban on out-of-state circulators: (1) increased costs caused by the

ban/increased collection efficiency from out-of-state petition circulators/poor collection from in-

state circulators, Exhibit A, First Decl. of Hendrix at ¶¶17, 19; Exhibit B, First Decl. of Jacob at

¶¶12, 13, 18, 19; Exhibit C, First Decl. of Pool at ¶¶8,10, 24; Exhibit D, First Decl. of Owen at

¶¶6, 7, 16, 17, 18; (2) lack of available professional petition circulators in North Dakota, Exhibit

A, First Decl. of Hendrix at ¶¶13, 15; Exhibit B, First Decl. of Jacob at ¶11, 16; Exhibit C, First

Decl. of Pool at ¶¶28, 29; Exhibit D, First Decl. of Owen at ¶¶5, 6, 7, 9; (3) Out-of-state

circulators trained and ready to be deployed, Exhibit B, First Decl. of Jacob at ¶13; Exhibit C,

First Decl. of Pool at ¶¶24, 27; Exhibit D, First Decl. of Owen at ¶¶8, 13, 15; and, (4) Fraud by

in-state circulators/lack of fraud by out-of-state circulators, Exhibit B, First Decl. of Jacob at

¶¶14, 20; Exhibit C, First Decl. of Pool at ¶¶18, 19, 20, 21; Exhibit D, First Decl. of Owen at

¶¶11, 14.

All of the foregoing clearly demonstrates that, contrary to defendants' almost exclusive

reliance on *Jaeger*, this case is not controlled by *Jaeger* for the same reasons that *Citizens in*

*Charge* was not controlled by *Jaeger*.  The foregoing also establishes, based on the record

produced to date, the severity of the burden to First Amendment speech caused by the ban on

out-of-state circulators triggers strict scrutiny analysis and that the ban on out-of-state petition

circulators is not narrowly tailored to advance a compelling governmental interest under *Buckley*

and the overwhelming precedent cited in plaintiffs' main brief in support.

      **B.**      **Proposal to Amend State Constitution by the Legislative Council Staff of North Dakota's Initiated & Referred Measures Study Commission, Support Plaintiffs' Claims.**

Plaintiffs properly alerted this Court to the March 2018 proposed amendment to the state

constitution made by the staff of the Legislative Council for the Initiated and Referred Measures

Study Commission for the limited purpose for which plaintiffs cite to the amendment, namely

that North Dakota is well aware that the challenged ban on out-of-state petition circulators is

clearly not narrowly tailored to protect the state's interests and they were concerned at the weight

of authority, cited by plaintiffs in their main brief, that the ban could not survive constitutional

review.  It is obvious the proposal was not adopted – otherwise this action would be moot, and

plaintiff never contend otherwise.   It is nevertheless an important fact that North Dakota

legislative insiders are well aware of the constitutional infirmity of the ban on out-of-state

petition circulators such that some of them felt is advisable to propose an amendment to the state constitution.  For defendants to suggest that plaintiffs acted improperly in drawing the court's attention to this fact, and then suggesting that the veracity of the rest of plaintiffs' brief might also be questionable, lacks is any legal merit – especially when defendants make no effort to actually contest any of the cases cited by plaintiffs or plaintiffs' treatment of those cases in their main brief.

### C.       Out-of-State Circulators Can Easily Submit to North Dakota's Jurisdiction.

Defendants are correct that plaintiffs do not incant on the mechanics of how out-of-state petition circulators can submit to the jurisdiction of North Dakota in the main brief in support. The remedy requested by plaintiffs is easy to craft and effectuate.  In North Dakota, each petition circulator must execute the affidavit mandated by statute.  *See*, Exhibit B to the Complaint. Execution of the affidavit can only be made after the signatures have been collected and the petition is ready to be executed and filed with Defendant Howe.  Federal judges, when enjoining bans on out-of-state petition circulators require the out-of-state petition circulators to execute an affidavit submitting to the jurisdiction of the state and attaching the affidavit to each petition.

Plaintiffs attach examples of previous federal orders detailing what out-of-state petition circulators were required to execute in order to be covered by the judge's injunctive relief.  *See*, Exhibit G, Order and "Statement to Accompany Nomination Petitions Circulated by Benezet Consulting, LLC OR Accelevate 2020, LLC" issued by Judge Kane in *Accelevate 2020, LLC v. Boockvar*, 1:20-cv-0128; and, Exhibit H, Order issued in *OpenPittsburgh.org v. Wolosik*, by Judge Hornak enjoining ban on out-of-state petition circulators for Home Rule Charter amendments in Pennsylvania.

To be clear, no petition needs to be altered.  Whatever text the Court requires an out-of-state circulator to agree to as a condition to lawfully circulate and file petitions, will be on a separate sheet of paper attached to the petition which the out-of-state circulator will need to execute and attach to the petition as part of the filing process.  Further, out-of-state circulators will continue to execute the affidavit on the petition but be directed that he/she shall not be covered by any text covered by the injunction.

> D.      **Plaintiff Satisfy All Prongs of _Dataphase_**.

Plaintiffs are content that, given the above resply, plaintiffs have established in their main brief that they meet all prongs of the _Dataphase_ test for injunctive relief and no further argument is required.

## II.    CONCLUSION

North Dakota's ban on out-of-state petition circulators severely impair rights guaranteed to plaintiffs under the First Amendment and is not narrowly tailored to protect the state's interest as established by Supreme Court precedent.   Plaintiffs continue to suffer irreparable harm and the ban in not in the public interest nor will defendants suffer from the issuance of the requested injunctive relief.  Accordingly, plaintiffs' motion for a temporary restraining order and, after a hearing, preliminary injunctive relief should be granted.

                                   Respectfully submitted

Dated:  October 5, 2023            __/s/ **Paul A. Rossi**_____
                                   Paul A. Rossi,
                                   _Counsel to all Plaintiffs_,
                                   IMPG Advocates,
                                   316 Hill Street,
                                   Suite 1020
                                   Mountville, PA  17554
                                   717.961.8978
                                   Paul-Rossi@comcast.net,

## CERTIFICATE OF SERVICE

Plaintiffs, by and through their undersigned legal counsel, hereby certify that on this date,

the foregoing document was filed electronically through the Court's ECF system and that

opposing counsel was automatically served a copy of the same on this date.

Dated:  October 5, 2023                    __/s/ **Paul A. Rossi**_____

Paul A. Rossi
*Counsel to all Plaintiffs*